UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 06-106-HRW

RICKEY HOLLIE,                                                                                    PLAINTIFF,

V.                         **MAGISTRATE JUDGE'S
                            REPORT AND RECOMMENDATION**

DENISE BLACK, et al.,                                                                       DEFENDANTS.

This is a *pro se* civil rights action filed by an inmate incarcerated at the Little Sandy correctional Complex [LSCC] in Sandy Hook, Kentucky.  The Plaintiff, Rickey Hollie [Hollie] filed this action pursuant to 42 U.S.C. § 1983  alleging that the Defendant, Denise Black [Black] denied him medical attention, discriminated against him on the basis of race, and retaliated against him for filing a grievance against her. [R. 1].  The  matter is now before the Court on the Black's Motion for Summary Judgment. [R. 30].  Fully briefed, it is ripe for review.

**FACTUAL BACKGROUND**

On February 8, 2006, Hollie filed his first grievance against Black alleging  that she had wrongfully denied his request to be placed on the facility's "clipper list," a list of prisoners allowed to shave using clippers rather that the provided razor and "Magic Shave." [R. 1, Ex. 2].  In his grievance, he alleged:

> Note:  Two medical request form's sent on the 6 and 7 of 2/2006.  Medical Ms. Black refused to allow Afro African Inmates to be placed on clipper list while housed in S.M.U. Unless Inmates face are first covered with razor burns and hair-bumps "scabs" due to usage of razor's and or magic shave. This is an Racial directed action against African Inmates Due to the fact that it is Africans that suffer mostly from this Illness or condition . . . This is Curl and unusual Punishment in it's most

blatntly [sic] form . . .

[R. 1, Ex. 2].

For relief, Hollie requested that:

African Inmate should not have to first endure the painful and scareful [sic] fate that awaits them from usage of Razors an or magic shave, knowing the outcome before hand in order to satisfy the curiosity of medical and security staff. Afro Inmates should be placed on clipper list at his request.

[R. 1, Ex. 2].

Black responded that inmates are placed on the clipper list "as deemed necessary by medical regardless of race." [R 1, Ex. 2].

While the first grievance was pending before the institution's Health Care Grievance Committee[1] another incident occurred between Hollie and Black on March 9, 2006. As a result of this second incident, Hollie filed a second grievance in which he alleged:

On 3-9-06 At or about 1:20 pm Medical Personal Miss Black came to my Cell. I asked Miss Black to look at the sore's on my face and neck from shaving and to be placed on the clipper list. Black asked me, "is that from shaving?" I said "yes." She nodded in the affirmative (for placing me on the clipper list) She asked my name I told her. She then said "Hell no you put a grievance on me said I was racist. I knew you would need something from me I was just waiting. Hell no I ain't gone put you on no list for anything." Black would not treat me because of Prior Grievance.

[R. 1, Ex., 2, Grievance dated March 9, 2006].

For relief, Hollie sought an . . . "Agreement on a fair reckoning, plus fair medical treatment."

---

[1]By decision dated March 27, 2006, the Grievance Committee concurred that the grievance had been resolved. "The medical department makes the decision on who is placed on the clipper list. Their decision is based solely on their medical condition." [R. 1, Ex. 2] On March 29, 2006, Hollie appealed the decision to Dr. Haas, the Medical Director, who directed on April 26, 2006, that Hollie be assessed by medical staff to determine whether it is indicated that he be placed on the clipper list.

[R. 1, Ex. 2]. His request for relief was denied initially by the Grievance committee, and upon appeal before Commissioner Rees. [R. 30, Ex. 11.]

He subsequently filed this action pursuant to 42 U.S.C. § 1983 alleging that Black denied him of medical attention, discriminated against him on the basis of race, and retaliated against him for filing a grievance when she refused to place him on the clipper list. [R. 1].

## STANDARD OF LAW

Generally, *pro se* documents are not held to the same standards as formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519 (1972). For instance, a *pro se* complaint will be liberally construed when questioning whether it fails to state a claim upon which relief could be granted. Estelle v. Gamble, 429 U.S. 97 (1976); Haines, 404 U.S. at 520. Drafting a formal pleading requires some familiarity with principles of law, and *pro se* litigants should not be precluded from resorting to the courts for lack of sophistication or legal training. Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). However, courts have refused to excuse *pro se* litigants who fail to follow basic procedural requirements such as meeting filing deadlines, e.g. Jourdan, 951 F.2d at 110; Eglinton v. Loyer, 340 F.3d 331, 335 (6th Cir. 2003), and have refused to grant special or preferential treatment to *pro se* parties when responding to summary judgment motions. Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears

the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

## ANALYSIS

In her Motion for Summary Judgment, Black contends that she is entitled to summary judgment on all of Hollie's claims. [R. 30.] Specifically, she argues that Hollie failed to exhaust administrative remedies; that Black was not deliberately indifferent to Hollie's medical needs; and that the decision to deny Hollie's request to be placed on the clipper list was not racially motivated or in retaliation for filing a grievance.

## EXHAUSTION OF REMEDIES

As a threshold issue, the Court will address the Defendant's contention that Hollie's claims are barred for failure to exhaust administrative remedies. The Defendant argues that pursuant to the Prison Litigation Reform Act, 42 U.S.C. 1997e(a), Hollie cannot bring the instant action without first exhausting his administrative remedies. 42 U.S.C. 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Defendant relies on the Department of Corrections inmate grievance procedure under Corrections Policy and Procedure 14.6, which states: "the grievant shall include all aspects of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1." [R. 31, p. 4]. The Defendant recites that Hollie's Grievance 06-073 generally requests that:

> African Inmates should not have to first endure the painful and scareful fate that awaits them from usage of Razors or magic shave, knowing the outcome before hand in order to satisfy the curiosity of medical and security staff. Afro Inmates should be placed on clipper list at his Request.

The Defendant contends that because Hollie fails to mention exactly what relief he desires, such as monetary and punitive damages, his effort to exhaust any available administrative remedies is deficient, as he failed to fully comply with the Department of Corrections policy regarding grievances. [R. 30.] However, such a result is clearly contrary to the holding in Booth v. Churner, 532 U.S. 731 (2001).

Booth was a prisoner in a Pennsylvania state prison who brought an administrative grievance seeking monetary damages, a form of relief not provided for in the Pennsylvania's administrative

5

grievance procedure. His requested relief was initially denied, and he failed to seek administrative review of the unfavorable administrative decision. He next brought a § 1983 action against prison guards alleging use of excessive force, assaulting him, and denying him medical attention. Id. at 731. The District Court dismissed his complaint without prejudice for failure to procedurally exhaust his administrative remedies and the Third Circuit affirmed. Id. at 731. Booth argued that he was excused from exhaustion as the Pennsylvania grievance system failed to provide a remedy as contemplated in the PRLA as a monetary award, the relief he sought, was not an available remedy. Id. at 737-738. Reasoning that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible, the Supreme Court affirmed the Third Circuit Court of Appeals, holding that ". . . an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Id. at 741.

Likewise, in the case of Spruill v. Gillis, 372 F.3d 218 (3rd Cir. 2004), the Court found that a prisoner could not have failed to follow the state provided grievance procedure by failing to ask for money damages, a form of damages not available in the grievance procedure. Id. at 234. The Court found that the prisoner procedurally exhausted his claims in spite of the fact that he did not request monetary damages in the grievance procedure.

In the instant case, the defendants do not contend that Hollie in some way failed to procedurally exhaust his grievances, but only that he did "not request specific relief for the incident which he alleges in his grievance." [R. 31, p. 5]. Specifically, he did not make a claim for monetary damages in his administrative grievance proceeding. He did, however, request relief in the form of being placed on the clipper list at his request. A careful reading of that portion of the grievance procedure relied upon by the Defendant makes no reference to specifically pleading monetary

6

damages. What it does say is that "the grievant shall include all aspects of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1." [R. 31, p. 4]. Because the grievance procedure does not require an inmate to specify monetary relief, it cannot be said that Hollie failed to exhaust when he did not include a claim for monetary relief. As a result, the Court can only find that Hollie procedurally exhausted his administrative grievance procedure, regardless of the fact that the relief he now seeks was not asserted in the administrative process. As in Booth, that failure will not bar this action, and this court will recommend a finding that he has exhausted regardless of whether "forms of relief sought and offered through administrative avenues" fit with those requested in the instant matter. Id. at 741.

## **DELIBERATE INDIFFERENCE**

Next, the Court will address the Plaintiff's claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The Defendant contends that Black was not deliberately indifferent, and seeks summary judgment on this claim.

The Eighth Amendment imposes on prison officials the duty to provide humane conditions of confinement, including adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In order for an inmate to prove the existence of conditions of confinement amounting to cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must meet two criteria: First, the deprivation alleged must be objectively, sufficiently serious, resulting in the denial of "the minimal civilized measure of life's necessities. Id. at 834. Second, prison officials must act with deliberate indifference to inmate health or safety. Id. at 834, citing Wilson v. Seiter, 501 U.S. at 302-303. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate

humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The instant case is one in which Hollie alleges a violation of his right to be free from cruel and unusual punishment in violation of the Eighth Amendment as a result of Black's failure to place him on the "clipper list." [R. 1.] However, in the instant case, Hollie has failed to establish a question of fact regarding whether failure to place him on the clipper list amounts to a deprivation of one of life's basic necessities. Farmer 511 U.S. at 834. In addition, there is no evidence in the instant case to indicate that the use of the state supplied razor created a serious risk to inmate health or safety. Id. at 837. The Court cannot, therefore, find that Hollie's sensitivity to shaving is a medical need of constitutional significance, and the Defendant is therefore entitled to summary judgment on his claim of cruel and unusual punishment.

Therefore, the Court finds that the Defendant is entitled to summary judgment on Hollie's Eighth Amendment claim of deliberate indifference.

### RACIAL DISCRIMINATION

Hollie also contends in this action that the decision denying his plea to be placed on the clipper list was motivated by a racially discriminatory motive.

> Ms. Black refused to allow Afro African Inmates to be placed on clipper list while housed in S.M.U. Unless Inmates face are first covered with razor burns and hair-bumps "scabs" due to usage of razor's and or magic shave. This is an Racial directed action against African Inmates Due to the fact that it is Africans that suffer mostly from this Illness or condition

[R. 1, Ex. 2.]

8

In order for Hollie to establish a constitutional violation, he "must prove that a racially discriminatory intent or purpose was a factor in the decision of prison officials. Copeland v. Machulis 57 F.3d 476, 480 (6th Cir. 1995)(citing Village of Arlington heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977). In the instant matter he has offered no such evidence, and as a result, the Defendants are entitled to summary judgment on his claim of racial discrimination.

In the instant case, Hollie presents no evidence that would create a question of fact regarding whether the decision was racially motivated. His allegations, and the affidavits upon which he relies make no reference to factual information which would support his argument that he was the subject of racial discrimination. His only allegation of alleged racial discrimination is his own statement that "This is an Racial directed action against African Inmates Due to the fact that it is Africans that suffer mostly from this Illness or condition . . ." [R. 1, Ex. 2.] Without evidence to create a question of fact, the Defendant is entitled to summary judgment on his claim of racial discrimination.

## **RETALIATION**

Finally, the Court will address Hollie's claim that the decision to deny his request to be placed on the clipper list was in retaliation for filing a grievance. Simply, Hollie alleges that:

> On 3-9-06 At or about 1:20 pm Medical Personal Miss Black came to my Cell. I asked Miss Black to look at the sore's on my face and neck from shaving and to be placed on the clipper list. Black asked me, "is that from shaving?" I said "yes." She nodded in the affirmative (for placing me on the clipper list) She asked my name I told her. She then said "Hell no you put a grievance on me said I was racist. I knew you would need something from me I was just waiting. Hell no I ain't gone put you on no list for anything." Black would not treat me because of Prior Grievance.

[R. 1, Ex. 2.]

In support of this claim, Hollie relies upon the handwritten statements of several inmates including Shawn Dooley, who states that on 3-9-06 he heard Black say ""Hell no I ain't putting you

9

on no list you filed a grievance on me said I was a racist" She then started walking up the hall saying "I knew you would ask me for something I was just waiting I was just waiting."" [R. 28, Ex. 12]. In addition, Hollie relies upon the handwritten statement of James A. Webb, Jr. an inmate at LSCC who recites that she overheard Black tell Hollie that she would not put him on the clipper list as a result of the grievance that was filed. [R. 28, Ex. 14].

To state a claim of retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

Clearly, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir.2000); see also Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir.2001). However, this right is only protected if the grievances are not frivolous. Herron, 203 F.3d at 415, citing Lewis v. Casey, 518 U.S. 343, 353 (1996). Therefore, under this framework, the Court must consider the first grievance filed by Hollie seeking to be placed on the clipper list, to determine whether filing that grievance was protected conduct.

In his grievance, he alleged that Black's failure to place him on the clipper list was racially motivated as well as cruel and unusual punishment. [R. 1, Ex. 2.] However, as stated above, he can offer no evidence to show that the decision was racially motivated, and his claim of cruel and unusual punishment fails to rise to the level of constitutional significance. Therefore, the Court can only find that his grievance was frivolous, and therefore, not protected. Even assuming that the

10

grievance was protected conduct, his claim would fail as he cannot show that the any action taken against him would deter a person of ordinary firmness from continuing to engage in that conduct. See Thaddeus-X, 175 F.3d at 394.

The defendants argue that as Hollie continued to exercise his rights by proceeding to seek review of his grievances, the evidence shows that failure to place him on the clipper list was not sufficiently adverse. [R.30, p. 13. ] However, the later filing of a grievance by Hollie will not alone serve to demonstrate that state action was not sufficiently adverse. See Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007).

In the instant case, the harm alleged by Hollie is that as a result of adverse action of being denied placement on the clipper list he suffered from skin sores and irritation resulting from his use of prison supplied razors to shave. More sever injury has been found not to be sufficiently adverse. Cf. Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003)(prisoner's allegations of being placed in disciplinary confinement for three months were sufficient to prevent complaint from being dismissed.); Jewell v. Leroux, 20 Fed.Appx 375, 77-78 (unpublished)("A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.");ACLU of Maryland v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993)("[w]ithdrawal of a special accommodation of an ACLU paralegal, whether or not it was done in response to filing of a lawsuit, is not sufficiently adverse to her or to the ACLU to constitute retaliation."). Therefore, Hollie's injury, standing alone, cannot be found to be sufficiently adverse to deter a person of ordinary firmness from exercising constitutionally protected rights, and Hollie's claim of retaliation must fail. Therefore, the Defendant is entitled to summary judgment on Hollie's retaliation claim.

## CONCLUSION

For the reasons stated herein, it is the recommendation of this Court that the Defendant's Motion for Summary Judgment [R. 30] be GRANTED, and that summary judgment be entered in favor of the Defendant on all of Plaintiff's claims, dismissing the matter with prejudice.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

This the 20th day of November, 2007.

Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge